UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 05-3132-white

UNITED STATES

v.

DAVID MORALES and
ELVIS HERNANDEZ,

Defendants.
_____/

FILED by __ D.C.
MAG. SEC.
AUG 29 2005
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 1999?  ___ Yes  _X_ No
   If yes, was it pending in the Central Region?
   ___ Yes  _X_ No

2. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 2003?  ___ Yes  _X_ No

3. Did this matter originate from a matter pending in the Narcotics Section (Miami) of the United States Attorney's Office prior to May 18, 2003?  ___ Yes  _X_ No

4. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ___ Yes  _X_ No

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____
SCOTT E. RAY
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 802050
99 N. E. 4th Street
Miami, Florida  33132-2111
TEL (305) 961-9033
FAX (305) 530-7976

# United States District Court

__SOUTHERN__ DISTRICT OF __FLORIDA__

UNITED STATES OF AMERICA

V.

DAVID MORALES AND
ELVIS HERNANDEZ

**CRIMINAL COMPLAINT**

CASE NUMBER: 05 - 3132 - White

I, the undersigned complainant, being duly sworn, states the following is true and correct to the best of my knowledge and belief. From in or about June 2005 to on or about August 27, 2005, at Miami-Dade County in the Southern District of Florida, and elsewhere, the defendants did knowingly and intentionally combine, conspire, confederate and agree with each other to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of marijuana, and did attempt to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of marijuana uin violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the Drug Enforcement Administration and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

_William T. Hodge_
Signature of Complainant
WILLIAM T. HODGE, SPECIAL AGENT
U.S. DRUG ENFORCEMENT ADMINISTRATION
AUGUST 29, 2005

Sworn to before me, and subscribed in my presence,

AUGUST 29, 2005                           at  Miami, Florida
Date                                          City and State

PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer        Signature of Judicial Officer

## **AFFIDAVIT**

I, William T. Hodge, Special Agent (S/A), Drug Enforcement Administration (DEA), Miami, Florida, being duly sworn, state as follows:

I am a Special Agent (S/A) with the Drug Enforcement Administration (DEA) and have been so since April 1998. Prior to my employment with DEA, I was a police officer with the West Columbia Police Department in West Columbia, South Carolina for a period of approximately four and one-half years. In addition to my Basic Agent Training from DEA in Quantico, Virginia, I have completed training at the South Carolina Criminal Justice Academy. During my tenure as a Special Agent with the DEA, I made over a hundred felony arrests involving the illegal transportation and distribution of narcotics. I have received specialized training in all aspects of Law Enforcement, including but not limited to, the detection and arrest of illegal narcotic traffickers and the detection of narcotics as it is transported inside of semi-truck/tractor trailers.

2. The information set forth in this affidavit is based upon information relayed to me by other federal and state law enforcement officers, reliable confidential sources of information, and upon my own observations during the course of this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause that DAVID MORALES and ELVIS HERNANDEZ did knowingly and intentionally combine, conspire, confederate and agree with each other and others to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of marijuana, and did attempt to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of marijuana in violation of Title 21,

1

United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846, it does not include all of the details of the investigation of which I am aware.

## BACKGROUND

As indicated below, there is probable cause to believe MORALES and HERNANDEZ are involved in an ongoing scheme to traffic in controlled substances. The information herein was derived during a marijuana-trafficking investigation, and is based upon my review of consensual tape recordings and debriefings of a confidential source of information proven reliable throughout the investigation, my own personal knowledge, experience, background, surveillance, training and on information provided to me by other law enforcement agents and investigators assigned to this investigation and other related investigations.

In June 2005, the Drug Enforcement Administration debriefed a Confidential Source (CS) regarding information pertaining to a multi-hundred pound marijuana smuggling organization in operating in Southern Florida, specifically, Doral and Hialeah, Florida. The marijuana smuggling organization is led by David MORALES, hereafter referred to as MORALES. The CS has specific knowledge as to the modus operandi of MORALES' marijuana trafficking organization.

MORALES utilizes inoperable VanDorn plastic molding machines to store and transport multi-hundred pound quantities of marijuana from El Paso, Texas to Hialeah, Florida. During the course of this investigation, the CS has become intricately involved in MORALES' day to day narcotics activities. The CS has also provided historical information on MORALES' involvement in numerous other multi-hundred pound shipments of marijuana smuggled from El Paso, Texas to Hialeah, Florida. The information provided by the CS has proven to be reliable,

true and accurate throughout this investigation and through independent investigations conducted by agents of the DEA.

According to the CS, MORALES ships three VanDorn molding machines via an independent trucking company from Hialeah, Florida to El Paso, Texas with the payment for the marijuana concealed inside one of the VanDorn machines. Once the VanDorn machines have arrived El Paso, Texas, the CS and other co-conspirators meet with an independent truck driver and unload the machines into a warehouse located at 11450 James Watt, Bay C-4, El Paso, Texas. The VanDorn machines are then placed inside the warehouse and the money is extracted for payment to the Mexican source of supply (SOS). At that time, a subsequent meeting is planned with the SOS and payment is made for the multi-hundred pound shipment of marijuana.

Once payment is made to the Mexican SOS, the Mexican SOS takes the co-conspirators to another location where one of the co-conspirators gets into a vehicle pre-loaded with marijuana. The co-conspirators then drive the vehicle loaded with marijuana to the Gold Coast Shipping warehouse located at 11450 James Watt, Bay C-4, El Paso, Texas, and unload the marijuana. This operation is repeated until all of the purchased marijuana is picked up by MORALES' co-conspirators.

Once the marijuana is cut and repackaged for shipment, MORALES contacts an independent bonded trucking broker to post the shipment of the VanDorn molding machines from El Paso, Texas to Hialeah, Florida. The CS stated that MORALES coordinates all of the hiring of the independent truck drivers.

3

## THE CURRENT INVESTIGATION

From July 2005 to the present, agents of the DEA have observed the CS meet with MORALES and additional members of this organization. Numerous audio and video recordings, pictures, and surveillance notes have been made documenting these meetings.

DEA agents in Miami, Florida have observed the CS meet with MORALES on numerous occasions. The CS has been given instructions by MORALES on purchasing airline tickets, rental cars and hotel rooms in furtherance of MORALES' marijuana smuggling organization.

On June 17, 2005, the investigating agents observed the CS meet with MORALES. MORALES instructed the CS to correct flight times for the CS and another unnamed co-conspirator. MORALES advised the CS that the semi-truck was en-route to El Paso, Texas and should be arriving soon with the money.

On June 19, 2005, MORALES and the CS met in order to further discuss MORALES' marijuana smuggling organization. Inside MORALES' residence, MORALES walked into the kitchen and then handed the CS $1,480.00 in U.S. currency. MORALES obtained the U.S. currency from an unknown location inside the kitchen area. MORALES told the CS that the money was to be used by the CS to pay for expenses incurred for his travel to El Paso, Texas, for the purpose of smuggling marijuana from Texas to Florida.

On July 15, 2005 the CS met with MORALES to discuss the CS and MORALES "legitimizing" MORALES the warehouse in Hialeah, Florida in order to prevent MORALES' neighbors from becoming suspicious about the true purpose of MORALES' business. During the meeting, MORALES provided the CS with two money orders in the amount of $250.00 and $500.00 to pay for the July rent at the El Paso, Texas warehouse. MORALES instructed the CS

4

to overnight the money orders to Francis Properties, the management company for the warehouse in El Paso, Texas. The CS stated that this warehouse in El Paso, Texas is utilized to store and repackage the marijuana for shipment to Hialeah, Florida.

On August 8, 2005, the CS met MORALES and MORALES provided the CS $760.00 in U.S. currency to pay for the August rent on the warehouse located in El Paso, Texas. The CS advised that MORALES walked up to MORALES' bedroom and returned with the $760.00 that MORALES then gave to the CS.

On August 9, 2005, the CS met MORALES and MORALES walked up to MORALES' bedroom and produced U.S. currency to the CS in the amount of $800.00. MORALES told the CS to use the $800.00 to purchase the airline tickets for MORALES, Yanisa ROMERO and the CS to fly to El Paso, Texas and pick up a multi-hundred pound shipment of marijuana.

On Thursday, August 18, 2005, agents of the DEA in El Paso, Texas conducted a consensual search of the Gold Coast Shipping warehouse located at 11450 James Watt, Bay C-4, El Paso, Texas. During the search, three VanDorn molding machines were located in the warehouse. Upon opening one of the machines, the DEA agents seized approximately two hundred and seventy four pounds of marijuana. A search of the other two VanDorn machines was negative. Additionally, a contract between Permian Machine Movers, Inc. and "G.G." was provided to the investigating agents by the CS. This contract requested that Permian Machine Movers, Inc. transport one VanDorn molding machine weighing approximately 7,400 pounds from Gold Coast Shipping located at 11450 James Watt to International Multiple Services, located at 2440 W. 80th Street, Miami, FL, 33016. Upon arrival in Hialeah, Florida, the independent truck driver's point of contact was "David" with a telephone number of (786) 302-

5

0503. This telephone number is one several telephone numbers that MORALES utilizes for marijuana trafficking.

On Saturday, August 27, 2005, at approximately 4:38 p.m., a tractor trailer bearing the name "M and L Transport Inc." arrived at 2440 West 80th Avenue, Bay #5, Hialeah, Florida. This is the same tractor trailer that was observed in El Paso, Texas on Thursday August 18, 2005 being loaded with a molding machine containing approximately two hundred and seventy four (274) pounds of marijuana. This marijuana was subsequently seized by DEA agents in El Paso, Texas. At approximately 6:30 p.m., MORALES and HERNANDEZ met the driver of the tractor trailer and began to unload the molding machine that contained the marijuana. Once the molding machine was uncovered, HERNANDEZ, operating a forklift, unloaded the machine and placed the molding machine inside the warehouse. At that time, HERNANDEZ and MORALES had a brief conversation and MORALES started to depart the area. HERNANDEZ and MORALES were then arrested by DEA agents and transported to DEA Headquarters for processing. While MORALES was being handcuffed, MORALES asked the DEA agents to release his girlfriend because "She does not have anything to do with this."

While at DEA Headquarters, after being advised of their Miranda rights, MORALE invoked his right to remain silent. HERNANDEZ waived his right to remain silent and provided the following details to the investigating agents. HERNANDEZ stated that he and MORALES were at the warehouse to unload a molding machine that contained approximately two hundred pounds of marijuana. HERNANDEZ stated that he was to be paid two thousand dollars for operating the forklift for MORALES.

6

Your Affiant submits that based upon the above facts, there is probable cause to believe that MORALES and HERNANDEZ did knowingly and intentionally combine, conspire, confederate and agree with each other to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of marijuana, and attempt to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of marijuana uin violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NAUGHT

_____
William T. Hodge, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this __29__ day of August, 2005.

_____
PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE

7